HAUGER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. July 13, 1909.)

No. 828.

1. CRIMINAL LAW (§ 427*) — EVIDENCE — DECLARATIONS OF ALLEGED CO-CONSPIRATOR.

Declarations of an alleged co-conspirator to a witness are inadmissible to prove the existence of the conspiracy as against another party thereto.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1012; Dec. Dig. § 427.*]

2. CRIMINAL LAW (§ 427*)—EVIDENCE—RES GESTÆ—DECLARATIONS OF CONSPIRATOR—CONFESSION.

In a prosecution of defendant for counterfeiting, the confession of an alleged co-conspirator while in jail to his keeper, implicating accused in a scheme to manufacture and pass counterfeit money, was inadmissible as res gestæ prior to or in the absence of competent testimony to establish the conspiracy.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1012; Dec. Dig. § 427.*]

3. CRIMINAL LAW (§ 424*) — EVIDENCE — CONSPIRACY—SUBSEQUENT DECLARATIONS OF CONSPIRATOR.

Declarations and confessions of an alleged co-conspirator after the offense had been committed and the parties had been arrested were inadmissible against accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1002–1010; Dec. Dig. § 424.*

Admissibility, on trial of joint indictments of acts and declarations of conspirators and codefendants after accomplishment of object, see note to Sorenson v. United States, 74 C. C. A. 472.]

4. CRIMINAL LAW (§ 407*)—EVIDENCE—ADMISSIONS BY ACCUSED.

In criminal cases, alleged admissions by accused from his failure to deny incriminating statements made in his presence are subject to the same rules as applied to confessions.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 898–900; Dec. Dig. § 407.*]

5. CRIMINAL LAW (§ 407*)—EVIDENCE—STATEMENTS OF ANOTHER.

Where only portions of the confession of an alleged co-conspirator had been repeated to defendant, his failure to deny the same did not justify the admission of the entire confession of such co-conspirator.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 898–900, 968; Dec. Dig. § 407.*]

6. CRIMINAL LAW (§§ 419, 420*)—EVIDENCE—HEARSAY.

Hearsay evidence is incompetent to establish any specific fact, the nature of which is susceptible of proof by witnesses who speak from their own knowledge.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 973–983; Dec. Dig. §§ 419, 420.*]

7. CRIMINAL LAW (§ 407*)—EVIDENCE—ADMISSIONS—STATEMENTS BY ANOTHER—FAILURE TO DENY.

Where defendant was under arrest and in charge of an officer in one room of his house, while another officer with defendant's wife searched the adjoining room, incriminating statements made by the wife were inadmissible against accused on the theory that he could have heard and did not deny them, since even if he heard, being under arrest, he might have felt that he was not at liberty to speak.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 898–900, 968; Dec. Dig. § 407.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. CRIMINAL LAW (§ 404*)—DEMONSTRATIVE EVIDENCE—COUNTERFEIT COIN.

In a prosecution for counterfeiting, counterfeit coin alleged to have been obtained by the witness from a police officer in Pittsburg, whose name he could not remember, and who said he obtained the same from M., whom the government claimed was an accomplice, and others obtained from various persons in the same place, whose names the witness could not remember, also claiming to have obtained them from M. before his arrest, was inadmissible against the defendant; there being no proof to connect him with them.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 404.*]

9. INDICTMENT AND INFORMATION (§ 71*)—SUFFICIENCY.

The true test of the sufficiency of an indictment is not whether it might possibly have been more certain, but whether it sufficiently apprises defendant of what he must be prepared to meet, and is sufficiently explicit to avail him on a subsequent plea of former conviction or acquittal.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 193, 194; Dec. Dig. § 71.*]

10. COUNTERFEITING (§ 16*)—INDICTMENT—DESCRIPTION OF MONEY.

An indictment charging accused with unlawfully, etc., making and forging a large number, to wit, 110 coins, in resemblance and similitude of the true and genuine coin theretofore coined at the mint of the United States, called a "dollar," contrary to the form of the statute, etc., was not objectionable for failure to charge the kind of dollar alleged to have been counterfeited, whether silver or gold.

[Ed. Note.—For other cases, see Counterfeiting, Cent. Dig. §§ 25, 26; Dec. Dig. § 16.*]

In Error to the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

John M. Hauger was convicted of counterfeiting, and he brings error. Reversed.

Brown & Blizzard and A. G. Hughes, for plaintiff in error.

Reese Blizzard, U. S. Atty., and E. M. Showalter, Asst. U. S. Atty.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. John M. Hauger, plaintiff in error, defendant below (and who will hereafter be called the defendant) was tried by jury and convicted in the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg, at January term, 1908, on an indictment charging him with making counterfeit United States coin. The indictment contained three counts, but the defendant was convicted only on the first count, which reads as follows:

"The grand jurors of the United States, impaneled, sworn, and charged at the term aforesaid, of the court aforesaid, on their oath, present that John M. Hauger, heretofore, to wit, on the —— day of October, in the year 1905, in the said district, and within the jurisdiction of said court, unlawfully and feloniously, knowingly did falsely make and forge a large number, to wit, one hundred and ten coins in the resemblance and similitude of the true and genuine coin, theretofore coined at the mint of the said United States, called a dollar, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The judgment of the court was that the defendant be imprisoned at hard labor for a year and a day, and that he pay a fine of $110 and the cost of the prosecution. The defendant sued out a writ of error

from this court, and the case is before us upon exceptions duly taken in the course of the trial and allowed by the court, and assignment of error based thereon. The bills of exception are 11 in number, but we do not deem it necessary to pass upon all of them in order to dispose of the case here. The first exception is based upon the admission of the testimony of John E. Washer, a witness offered in behalf of the United States, who gave in detail an alleged confession made to witness by one George Menear in the city jail of Pittsburg, Pa., on the 31st day of January, 1906; the said George Menear being at the time confined in the said jail under arrest on the charge of passing counterfeit money. Washer testified that Menear's confession to him was as follows:

"That his name was George H. Menear. That he lived at Terra Alta, Preston county, W. Va. That he was released from the penitentiary of Western Pennsylvania in the fall of 1905, and returned to Preston county, W. Va., soon after being discharged. That he went to the home of John M. Hauger, with whom he had been formerly acquainted and who was then living on what is known as the White Farm, near Norinth, Preston county, along about the 1st of October, 1905, and took supper. He and defendant got in his buggy and drove to Hutton Switch, a distance of one-half to three-quarters of a mile from the residence of the defendant, and that on that occasion they entered into an agreement or conspiracy to make and pass counterfeit coin. That soon after this visit the defendant, John M. Hauger, gave to the said Menear ten dollars ($10) to go to Pittsburg and buy material for the purpose of making counterfeit coin, and that he (Menear) purchased said materials, consisting of plaster paris, metal, etc., and returned to the defendant John M. Hauger's home, where he and the defendant, Hauger, attempted to make counterfeit coins, at first meeting with poor success, but that they continued to experiment with the molds and material, and afterwards manufactured one hundred and ten (110) counterfeit silver dollars. That the said George Menear further said that the defendant, John M. Hauger, went to Oakland, Md., in the fall of 1905, and purchased from one John Davis a small portion of lead to be used in the making of said counterfeit coins, and also a small pair of scales, and that at the time said lead and scales were purchased the defendant, John M. Hauger, offered in payment of same to the said John Davis a silver dollar. That said Davis questioned the dollar, whereupon Hauger took it back, and Hauger told him about the matter when he came home, and refused to try to pass any more. That he, George Menear, had taken the counterfeit money so made and had gone to various towns and cities, among others, Rowlesburg, W. Va., Clarksburg, W. Va., Fairmont, W. Va., and Martinsburg, W. Va., where he had passed the said counterfeit coin, and that he had given to the defendant, Hauger, $40 or $45 of the profits arising from the making and passing of said counterfeit coin. That George Menear further said that on the same day that the defendant purchased the lead and scales from John Davis as aforesaid, he, the defendant, drew out of the bank $25, and that there were with it a number of silver dollars, 10 or 12 silver dollars. That George Menear further stated to the said John E. Washer that the molds in which the said counterfeit coins were made were made in the upstairs of the house in which the defendant, Hauger, lived, and that he and the said defendant, Hauger, made said molds during the daytime, and that the counterfeit coins so manufactured were made downstairs in the kitchen at night, and that the said George Menear further states that on one occasion while so manufacturing said counterfeit coins in the kitchen that he and the said defendant Hauger killed a rat behind the wall paper on the kitchen wall by sticking a knife through the paper, and into the rat, and that they threw the rat out of the kitchen window. That the said Menear still further stated to said Washer that the molds in which the said counterfeit coins were so made were buried by himself and the defendant Hauger on the White Farm back of and near to the house in which the said Hauger lived at the time said coins were made on the bank of a small stream and near a big rock, and the said Menear designated by a plat or diagram the location where said molds were buried and could be found. He, the said

Menear, further stated to the said Washer, so he says, that the ladle used in the pouring of the metal in manufacturing said coins was in the defendant's house, and that a small bottle of chloride of silver was also left in the defendant's possession at the White Farm."

The defendant's counsel objected to the admission of this testimony, was overruled by the court, and duly excepted. Primarily the court seems to have admitted this statement of Menear on the ground that it was the declaration of a co-conspirator, for the court charged the jury:

"That the jury is instructed that, if they believe from the evidence that the defendant was an accomplice or co-conspirator with the witness George Menear for the making or passing of counterfeit coin, that any statement or confession made by Menear while conspiracy between him and defendant existed is evidence against the defendant, notwithstanding the fact that the witness Menear may not be allowed to testify as a witness on the trial."

We take it that the last clause of this instruction to the jury in which it is intimated by the court that Menear may not be allowed to testify as a witness on the trial is based upon the fact that Menear had been convicted of counterfeiting and had served a term in the penitentinary, and was, therefore, disqualified to be a witness.

It is not necessary, however, to discuss this proposition. The point which we shall consider is whether, under the circumstances, the alleged confession of Menear to Washer was admissible as the declarations of a co-conspirator. It is a well-settled principle of evidence that in a trial on an indictment for conspiracy after the unlawful agreement has been shown the acts and declarations of co-conspirators are admissible as a part of the res gestæ. By the act of conspiring together the conspirators have jointly assumed to themselves as a body the attribute of individuality, so far as regards the prosecution of the common design; thus rendering whatever is said or done by any one in furtherance of that design a part of the res gestæ, and therefore the act of all. For these reasons the conspiracy must be proved prima facie or such acts, and declarations are inadmissible. 3 Greenleaf on Evidence (16th Ed.) § 94, note 1. In this case there was an entire absence of evidence to prove the unlawful combination between Menear and the defendant. It is true that Menear stated to Washer, so Washer testified, that about the 1st of October, 1905, he, Menear, and the defendant entered into an agreement or conspiracy to make and pass counterfeit coin. But as to that fact the declaration of Menear was only hearsay. There is no rule which renders the declarations of an alleged co-conspirator, given secondhanded, admissible to prove the existence of the conspiracy. Such declarations are made competent only after the conspiracy has been shown to exist. In this view the alleged declarations of Menear were clearly incompetent. If, however, the unlawful combination between Menear and the defendant had been established so as to make the acts and declarations of Menear competent as evidence on the trial of the defendant, such acts and declarations of Menear as were committed or made in the course of the conspiracy and in furtherance of its object would have been admissible. The declarations of Menear which were admitted on the trial of this case were, as the record shows, after the overt act had been committed and the

purposes of the alleged conspiracy had been accomplished. For these reasons the said declarations were inadmissible as evidence against the defendant.

In this view of the case it was error to give the instruction above recited, and it was also error to refuse the following instruction to the jury which was requested by defendant's counsel:

"Instruction B. The court instructs the jury that the acts and declarations of a conspirator after an offense is committed may be received against the party making them, but not against his co-conspirators; and that if the jury believes from the evidence that the alleged conspiracy between defendant and George Menear had terminated at the time of the alleged confession of the said George Menear to John E. Washer, in Pittsburg, Pa., on January 31, 1906, and as detailed by said Washer, then the admissions and confessions of the said George Menear implicating the defendant cannot be considered as evidence against said defendant in this case."

It is argued, however, in behalf of the United States that the statements made by Menear to Washer were repeated by Washer to the defendant, and that defendant's answers at the time were competent to be used against him on the trial. Undoubtedly the declarations or admissions voluntarily made by a person in the course of conversation are admissible as testimony against him, but in criminal cases such declarations or admissions are admissible under the same rules as confessions. Only certain portions of the alleged confession of Menear are shown by the record to have been repeated to the defendant by Washer, and the fact that defendant may have said something when these portions were called to his attention, which tended to corroborate what Menear said, did not open the way to have the entire statement of Menear detailed in presence of the court and jury as evidence against the defendant. Aside from this, the Supreme Court of the United States has expressed itself in regard to the value of this class of testimony. In the case of Dalton v. United States, 63 U. S. 442, 16 L. Ed. 395, it is said:

"In all cases the testimony of admissions or loose conversations should be cautiously received, if received at all. They are incapable of contradiction. They are seldom anything more than vague impressions of a witness of what he thinks he has heard another say—stated in his own language, without the qualifications or restrictions, the tone, manner, or circumstances, which attended their original expression."

And we may say that, the defendant being at the time the conversation between him and Washer is alleged to have taken place under arrest and in Washer's custody, it is questionable whether what defendant said to Washer is competent at all. See Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568. As we have said, all of Washer's testimony detailing the alleged confession of Menear, except such portions of it as Washer states was the subject of conversation between him and defendant, is only hearsay. It is not necessary to refer to any rule or to cite authority in regard to the inadmissibility of hearsay testimony, but we will call attention to one leading case on that subject. Queen v. Hepburn, 11 U. S. 290, 3 L. Ed. 348. In this case Chief Justice Marshall, delivering the opinion of the court, says:

"That hearsay evidence is incompetent to establish any specific fact which fact is in its nature susceptible of being proved by witnesses who speak from their own knowledge."

And in that case it is said:

"It was very justly observed by a great judge that 'all questions upon the rules of evidence are of such vast importance to all orders and degrees of men; our lives, our liberty and our property are all concerned in the support of these rules, which have been matured by the wisdom of ages and are now revered for their antiquity and the good sense in which they are founded.' One of these rules is that 'hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover combine to support the rule that hearsay evidence is totally inadmissible."

So strictly have the courts guarded and applied the rule that hearsay has been held incompetent even in aid of human freedom.

Another exception is based on the fact that, when Washer had arrested the defendant and had placed him in custody of one John W. Davis at defendant's residence, Washer proceeded to search the residence, and was accompanied by defendant's wife. In the course of this search Washer and the defendant's wife went into the kitchen, a room adjoining the sitting room, in which the defendant and Davis were left. Washer further stated that while in the kitchen he asked Mrs. Hauger for the ladle and the bottle of chloride of silver which Menear had said were there, and she denied knowing anything about them whatever. Washer then testified that he found a bottle of chloride of silver in a box on a shelf in the kitchen, and Mrs. Hauger said that Menear told her that it was a bottle of medicine which he had been using for a sore hand, and had given it to her to keep for him. In further search, he, Washer, picked up a ladle, and said to Mrs. Hauger what is that, and her reply was, "Oh, well." Washer also stated on his examination that he did not know whether Hauger heard the conversation between himself and Mrs. Hauger but that he could have heard it, had he been listening. Defendant's objection to this testimony was overruled by the court, and it was admitted. The rule of evidence involved in this exception is based upon the silence of the defendant when his wife made the alleged declarations to Washer. Silence of a party in presence of a statement made by another may be put in evidence against him on the ground that from his silence his assent to what is said is inferred. To give such silence, however, effect as an admission, the party charged with it must have been in a position to explain. Before acquiescence in the language or conduct of others can be assumed as a concession of the truth of any particular statement, or of the existence of any particular fact, it must plainly appear that the language was heard or the conduct understood. Wharton's Criminal Evidence (9th Ed.) § 680. In commenting on this principle, Mr. Wharton cites the case of Commonwealth v. Brailey, 134 Mass. 530, in which Judge Morton, Chief Justice, says:

"Declarations made in the presence of a party, to which he makes no reply, are sometimes competent, as equivalent to tacit admission by him. This depends on whether he heard and understood them, whether he is at liberty to

reply, whether he is in custody or under any restraint or duress, and whether the statements are made by such persons and under such circumstances as naturally to call for a reply."

The conversation between defendant's wife and Washer was calculated, and no doubt did, prejudice the rights of defendant in the minds of the jury, and yet it was admitted to go to the jury when it was not clearly shown that defendant heard it. Even if he had heard what she said he was under arrest, and may not have felt that he was at liberty to speak. Further than this, we do not see that the defendant was called upon, under the circumstances, to make an explanation, for the wife said nothing connecting him, in any way, with the articles found. If, as stated by Washer, the wife told contradictory stories in regard to the bottle of chloride of silver, this fact should not have gone to the jury as evidence tending to establish defendant's guilt, and testimony of her ejaculation "Oh, well," upon the finding of the ladle is equally objectionable. In our opinion, therefore, defendant's objection to the testimony referred to in both of the exceptions we have considered should have been sustained, and that it was error in the trial court to admit it.

Another exception is based on the admission (over defendant's objection) of testimony by witness, Washer, as follows:

"The said witness exhibited before the jury certain alleged counterfeit coins, to wit, eight dollars in likeness and similitude of the silver dollars of the United States, who stated that he obtained those alleged counterfeit dollars from various persons in the city of Pittsburg. Two of alleged counterfeit dollars, he, the said witness Washer, claimed he obtained from a certain police officer in Pittsburg, whose name he did not remember, the said officer claiming to Washer that he had taken the two said dollars from the person of said George Menear on the 14th of December, 1905, that being the day said Menear was arrested, said Washer further stating that the remaining six alleged counterfeit dollars he (Washer) had obtained from various persons in Pittsburg, whose names he did not remember, but who told him (Washer) that they had received the said alleged counterfeit dollars from the said George Menear previous to the date of his arrest as mentioned above."

This testimony was clearly incompetent. There was nothing to show the connection of the defendant with the counterfeit coins exhibited to the jury by Washer. If it were taken for granted that there were circumstances tending to prove connection between the defendant and Menear in making and handling counterfeit money, there was no evidence that Menear ever had these coins in his possession, or had anything whatever to do with them. Washer stated that he obtained the coins, two of them, from a policeman in Pittsburg, whose name he did not know, and who told him at the time that he (the policeman) got them from Menear; that the other six were obtained from persons in Pittsburg, who Washer did not know, and who also told him that they got them from Menear. The statements of the persons from whom the coins were obtained were hearsay, and were incompetent as evidence upon the grounds which we have heretofore stated. We do not deem it necessary to further discuss the inadmissibility of this testimony; for, as we before said, it was incompetent, and its admission was therefore error.

We shall treat of but one other exception in the case, and that is the one founded on the refusal of the court to sustain defendant's de-

murrer to the indictment upon which he was convicted. We have set out the count heretofore in full. By the demurrer the defendant challenges its sufficiency. We think the court was right in overruling the demurrer.

The draftsman in framing this indictment has followed substantially the words of the statute. The defendant is advised of the crime for which he is called to answer, namely, that he unlawfully, feloniously, knowingly did falsely make and forge a large number, to wit: one hundred and ten coins in the resemblance and similitude of the true and genuine coin theretofore coined at the mint of the said United States called a dollar, etc. The true test of the sufficiency of an indictment is not whether it might possibly have been made more certain, but whether it sufficiently apprises defendant of what he must be prepared to meet, and that it be sufficiently explicit to avail the defendant upon subsequent plea of former conviction or former acquittal. Defendant's objection to the indictment was that it did not describe the kind of dollar alleged to have been counterfeited, whether a silver or gold dollar. Such description was not necessary. It would have been only evidential. Matters of evidence as distinguished from the facts essential to the description of the offense need not be averred. There was no error in overruling the demurrer. However, for the errors which we have before indicated, the judgment of the Circuit Court should be reversed to the end that venire de novo be had.

Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes