(No. 19959)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANNA HEISSLER, Plaintiff in Error.

*Opinion filed February 21, 1930—Rehearing denied April 4, 1930.*

Roland V. Libonati, and John M. Lonergan, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, and John A. Swanson, State's Attorney, (Henry T. Chace, Jr., and Edward E. Wilson, of counsel,) for the People.

Mr. Commissioner Partlow reported this opinion:

Plaintiff in error, Anna Heissler, (hereafter called defendant,) was convicted of manslaughter in the criminal court of Cook county upon an indictment charging death by abortion upon Catherine Mau, and a writ of error has been prosecuted from this court to review the judgment.

Defendant was fifty-one years old. She lived at 1648 South Allport avenue, in Chicago, and on July 1, 1911, was licensed as a midwife. Mrs. Mau was thirty-one years old, was married, and lived with her husband and three children. Catherine Beyer testified that on February 6, 1928, she and Mrs. Mau went to the home of defendant, which was on the second floor of a two-story building, and that there was a midwife sign on the building. The witness sat in the kitchen and Mrs. Mau and defendant went into a room adjacent to the kitchen. The door was open about six inches and the witness heard defendant say: "You are four months, and I feel the baby's head; get off the table and think it over." The two women then came into the kitchen, and Mrs. Mau said to defendant that she thought she would go through with it. The witness remained in the kitchen and the other two women again entered the adjoining room. The witness heard Mrs. Mau say that she did not want the baby because her husband was sickly and she had all she could do to take care of her three children. In about ten or fifteen minutes defendant and Mrs. Mau came back into the kitchen. Defendant said that if Mrs. Mau got worse, to call her and she would come right over.

Mrs. Mau gave defendant a ten-dollar bill. The witness testified that on February 8, about 3:00 P. M., she met defendant at the home of Mrs. Mau. Defendant asked the witness to assist in caring for Mrs. Mau. They put her on a table, used a syringe on her privates, then put her back in bed. Mrs. Mau gave defendant $5, and defendant said the whole charge would be $15.

Frank Mau, husband of the deceased, testified that his wife was in good health prior to February 6. She had never had a doctor except when her children were born and that on February 7 she was sick all day. He called defendant on the telephone about 2:00 o'clock in the morning of February 8. He told her his wife had pains and he requested defendant to come to his home. Defendant reached the house about 2:30 A. M. The witness gave her an empty dish-pan and she went into the bed-room, where his wife was in bed. In about twenty minutes defendant came out of the room, and the witness saw in the pan a completely formed child and something that looked like a tube or a piece of hose. Defendant asked what she should do with the child. She wanted to put it in the stove but the witness objected. She took the pan into the toilet and returned with it empty. She remained at the house about half an hour and said that Mrs. Mau would be all right. Mrs. Mau was in bed until February 13, when Dr. Auerbach, the family physician, was called, who ordered her sent to the hospital. She was in the hospital about a month and died on March 11. The witness saw defendant at the police station on February 13, and she said she had never seen him before. On cross-examination the witness testified that at the hearing before the coroner he was asked these questions: "Did you notice around where you saw the foetus that there was some other substance? Was there some fluid?" and he replied, "I don't know." He was then asked, "Blood?" and he answered: "I could not see; I did not look at it; I hardly saw nothing."

Dr. Auerbach testified that he was the family physician and was called on February 13. He made an external examination of Mrs. Mau and found that she had been pregnant; that some instrumentation had been done; that an abortion had been performed and that peritonitis had set in. No objection was made to this evidence. Over objection he testified that in his opinion there was no occasion for an abortion, and that the infection was caused by something being introduced into the vaginal orifice. A hypothetical question was put to the doctor containing the principal facts in evidence, and he was asked if from the facts stated he had an opinion as to the cause of death, and he answered that his opinion was that an abortion had been performed, that sepsis or blood poison had set in, and that her general vitality kept her alive about twenty-eight days. On cross-examination he testified that he did not examine the vagina, and that she had been pregnant about four or five months.

Dr. Perlstein, an intern of the hospital, saw the deceased on February 26, 1928, and several times thereafter. He made several examinations of her, and testified that she died from acute general peritonitis.

A statement of the coroner's physician was admitted in evidence under a stipulation. It recited that on March 11 the physician made a post-mortem examination. The peritoneal cavity was filled with purulent fluid. Upon opening the uterus, necrosis of the internal os extending up the cervical canal and penetrating to the muscularis was present. The body of the uterus was friable and easily torn. He stated that Mrs. Mau came to her death by generalized peritonitis following a septic abortion.

Edward Sheehan, the police officer who arrested defendant on February 13, testified that she was taken to the police station, then to the hospital and back to the police station. She was identified by Mrs. Mau at the hospital as the woman who operated on her, and Mrs. Mau said she gave defendant $15. The officer asked defendant if

she knew Mrs. Mau, and defendant replied that she did not know her. After defendant was taken back to the police station she was asked various questions, to which she made answer, some of which were in the presence of the husband of the deceased. She denied that she knew Mrs. Mau or her husband or had ever been at their house or had performed any operation on Mrs. Mau. The statement contains various inconsistencies, contradictions and admissions.

Dr. Gertude Engbring testified that she is a physician and that she was licensed to practice in March, 1929; that in February, 1928, she was assigned to the obstetrical ward of the Cook County Hospital; that she was in the hospital when the deceased was brought there and made an examination of her and helped take care of her; that it was her opinion that just prior to that date the deceased had been pregnant; that there had been an abortion performed upon her and that it was not performed in order to save her life.

Evidence was offered by the State tending to show a previous abortion or attempted abortion committed by defendant.

Defendant testified that she met Mrs. Mau for the first time on February 1, 1928, at defendant's home and that Lillian Singer was present. Mrs. Mau came about noon. She said she was sick and wanted defendant to examine her. Defendant asked her if she expected a baby, and she said, "No, I used some pills for that." Defendant said she should not use them because they would make her sick. She asked Mrs. Mau why she did not go to a doctor, and Mrs. Mau replied that she did not want her husband to know and that she wanted to be examined by defendant. Defendant took her into another room, took a pan of water and washed her out, and she testified that as far as she could find the deceased was not pregnant. She testified that she was later called by the husband and went into the home. She denied the testimony of the husband with reference to what took place on that occasion, and testified that

the wash-pan contained cloth, blood and nothing else. She testified she received $5 from Mrs. Mau on February 6 and $5 from Mrs. Beyer on February 8.

Lillian Singer testified that she was at the home of defendant on February 1, about noon. Mrs. Mau was there and talked to defendant. She said she was sick, and took from her purse a box containing pills and said she had been using them right along. Defendant told her not to use them because they would hurt her, and that she had better go to a doctor and be examined. Mrs. Mau said she did not want to go to a doctor because she did not want her husband to know. Defendant examined her. They went into the bed-room, the door of which was half way open. Defendant took a basin of water, and in about five minutes she came out with cloths in her hands which were pretty dirty.

Defendant insists that Dr. Engbring was improperly permitted to express expert medical opinions based upon examinations which she had made of Mrs. Mau at a time when the witness was a medical student and before she had been licensed to practice medicine. Defendant is in no position to raise this question. Her counsel at the beginning of the examination of this witness stated to the court that he admitted the qualifications of the witness to testify. He made a few specific objections to certain parts of her evidence, but none of these objections were based upon the grounds now urged. These grounds cannot be urged for the first time in this court. The qualification of the witness to testify did not depend entirely upon the fact that she had or had not been licensed to practice medicine in this State, but it depended upon whether or not her education, training and experience were such as to qualify her to express an opinion on the points about which she was interrogated. The preliminary evidence shows that she had taken two years of pre-medical work, had taken four years of work in a medical school from which she had graduated, was an intern in the Cook County Hospital after she gradu-

ated, and had handled thirty or forty cases of this kind before she took care of Mrs. Mau. Under the facts in the record the evidence was properly admitted.

It is complained that the court erred in stating in the presence of the jury that the above witness was just as competent as any doctor who had been practicing for twenty years. In ruling on a specific objection the court made the statement of which complaint is made. The remark was intended to refer to the admissibility of the evidence and not to the weight to be given to it. The remark did not constitute reversible error.

It is insisted that the evidence of Dr. Auerbach relative to the condition of the deceased must have been based upon a history of the case given to him by the deceased rather than upon an examination made by him, and therefore his evidence was incompetent. This objection goes more to the weight than to the competency of the evidence. The evidence shows that the witness was the family physician. He made an examination of the deceased while she was in bed. He had taken care of her when two of her children were born. He testified that from his examination he formed an opinion that she had been pregnant, that an abortion had been performed and that peritonitis had set in. No objection was made to this testimony. He testified without objection that Mrs. Mau never had any disease, that he knew of, which would make it dangerous for her to bear another child. He was asked whether he thought the abortion was necessary to save her life. The question was objected to, the objection was overruled, and he answered in substance that it was not necessary. The answers were all based upon an examination made by the witness, and there was no error in admitting this evidence.

Objection is made to a hypothetical question put to Dr. Auerbach upon the ground that the question was based on incompetent evidence given by Dr. Engbring and that it contained facts which did not appear in the evidence.

The first part of the objection has been considered. It is not necessary that a hypothetical question contain only facts admitted to be true. (*Howard* v. *People,* 185 Ill. 552.) If the evidence is in conflict the question may, and should, embrace only the facts tending to support the claim of the party proposing the question. (*People* v. *Geary,* 297 Ill. 608.) Certain facts contained in the question are pointed out which it is claimed are not established by the evidence, but we think the question was substantially according to the proof. It is further insisted that the answer to the question is not responsive to it. This point was not urged before the trial court, where it could have been corrected if it was not responsive, and it cannot be urged for the first time in this court.

The State offered evidence of a prior attempted abortion by defendant on Lena Benes, which case was before this court in *People* v. *Heissler,* 300 Ill. 98. Defendant insists that this evidence was improperly admitted and that it was highly prejudicial. The question of the admissibility of evidence of prior offenses has been before this court on several occasions and the law relative thereto is well settled. (*People* v. *Hall,* 308 Ill. 198; *People* v. *Ernst,* 306 id. 452; *People* v. *Perlmutter,* 306 id. 495; *People* v. *Hobbs,* 297 id. 399; *People* v. *Hagenow,* 236 id. 514.) The evidence admitted was within the rules announced in these cases and no error was committed in admitting it. The seventh instruction given on behalf of the State told the jury that it was competent for the State to attempt to prove that defendant had committed an abortion on a prior occasion, stating the reason for such rule. The instruction was erroneous in the use of the word "attempt," but the error is not sufficient to reverse the judgment.

Defendant insists that the court improperly admitted in evidence the statements of Mrs. Mau made at the hospital in the presence of defendant, and the subsequent conversation at the police station between defendant and the police

officers. The principle upon which statements made in the presence of one accused of crime are admissible in evidence against him is, that his silence when he might, and naturally would, deny the accusation of guilt if it were untrue, is regarded as an acquiescence in the truth of the statements and an implied admission of guilt. (*People* v. *Cardinelli*, 297 Ill. 116.) Where the incriminating statements or accusations are denied *in toto* by the accused there can be no implied admission of guilt and such statements are inadmissible against him, (*People* v. *Schallman*, 273 Ill. 564,) but if he makes a reply admitting the truth of the statements, wholly or in part, both the statements and the reply are competent. (*People* v. *Harrison*, 261 Ill. 517.) The evidence shows that to nearly every question asked of the defendant by the officers she made a negative reply. She admitted, however, that the telephone number called by Mau on February 8 was her telephone number, that the deceased was sick, that she visited her home, that she examined the deceased and that the latter was flowing, that they spoke of the baby which the deceased was carrying, that she advised the deceased that she might get weak and lose the baby, and advised her to see a doctor. These admissions were competent to be used against defendant. It was competent to show that she had made certain denials to the police but later admitted her acquaintance with the deceased and her husband and that she had certain relations with the deceased.

It is claimed that the statements made to the police were not properly admitted because they contained a statement as to the charges against defendant. When the officers questioned defendant it was proper for them to state to her the ground on which she had been arrested and the charge which was made against her. The statement of the officers was in keeping with the charges which were subsequently made and upon which defendant was tried. There is no justifiable complaint against the admission of any of this evidence.

It is not argued that the evidence is insufficient to sustain the judgment, there was no error committed on the trial which would justify a reversal, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*