SKISKOWSKI v. UNITED STATES.
QUINN v. SAME.

Nos. 9153, 9224.

United States Court of Appeals
District of Columbia.

Argued May 27, 1946.

Decided Oct. 21, 1946.

Writ of Certiorari Denied Feb. 17, 1947.
See 67 S.Ct. 769.

GRONER, C. J., dissenting in part.

Mr. Harry T. Whelan, of Washington, D. C., (appointed by District Court) for appellant Skiskowski.

Mr. James K. Hughes, of Washington, D. C., for appellant Quinn.

Mr. Sidney S. Sachs, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney and John W. Fihelly, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

Appellants were convicted of assault with dangerous weapons while stealing money and property belonging to the National Bank of Washington. The indictment was brought under the Bank Robbery Statute, 12 U.S.C.A. § 588b.[1]

The appellants were jointly indicted and tried together and the appeals were heard together in this court. At the trial the prosecution produced evidence to show that on the morning of March 30, 1945, two tellers from the National Bank of Washington were in the process of delivering a valise containing some $24,000 cash to Kann's Department Store located across the street from the bank. As the tellers walked toward Kann's two men came up behind them. The teller carrying the valise was struck over the head with a piece of pipe wrapped in newspaper. One attacker held the second teller at bay with a revolver while the valise of money was taken by the other attacker and the two then fled to a waiting automobile driven by a third participant in the crime,

Evidence was introduced to show that appellant Quinn had visited a man named Joe Boley (alias Joe DiLeo) in Washington early in 1945. During the time of Quinn's visit to Boley, appellant Skiskowski and one Joe McCann came to Washington and the four men planned the robbery. Evidence was introduced to show that McCann and Quinn had attacked the bank tellers and that Skiskowski had driven the

---

[1] Appellants had also been indicted for the same offense as a violation of the D. C.Code, 1940, § 22—2901. This indictment was dropped as well as the first two counts of the indictment brought under subparagraph (a) of Sec. 588b of Title 12 U.S.C.A. which reads: "Robbery of bank; assault in committing or attempting to commit bank robbery; . receiving or disposing of stolen goods.

"(a) Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money.or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank; or whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such. bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,-000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,-000 or imprisoned not more than one year, or both.

"(b) Whoever, in committing, or in attempting to commit, any offense defined in subsection (a) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not less than $1,000 nor more than $10,000 or imprisoned not less than five years nor more than twenty-five years, or both.

"(c) Whoever shall receive, possess, conceal, store, barter, sell, or dispose of any property or money or other thing of value knowing the same to have been taken from a bank in violation of subsection (a) of this section shall be fined not more than $5,000 or imprisoned not more than ten years, or both. May 18, 1934, c. 304, § 2, 48 Stat. 783; Aug. 24, 1937, c. 747, 50 Stat. 749; June 20, 1940, c. 455, 54 Stat. 695."

automobile. Shortly after the commission of the crime the three men separated, and later the same day met at Boley's apartment for a first division of the loot. It was testified that the three active participants met later in New Jersey for an additional split of the stolen money.

On April 1, 1945, officers from the Newark Sheriff's office attempted to apprehend Skiskowski. He fled, leaving behind in his automobile $4,700 cash, $200 of which was in $1.00 bills serially identified as a part of the money taken from the valise carried by the tellers. A piece of lead pipe wrapped in newspaper was also found in the car.

On April 20, 1945, McCann and Quinn were accosted by federal officers in New York City. A shooting encounter followed which ended in the death of McCann and the wounding of Quinn, who escaped. Later, on May 22, 1945, Quinn was apprehended in New York.

Skiskowski was arrested in the room of a girl friend in Amityville, New York, on May 10, 1945. He was taken to New York City in the afternoon of May 10, and there photographed, fingerprinted, given a physical examination and questioned until about 10:30 in the evening. On May 11, he was arraigned before a United States Commissioner on a warrant for the robbery of the National Bank of Washington, which was non est in the District of Columbia.[2]

## I.

We shall first examine the points raised by Skiskowski on his appeal. They are: "(1) The admission in evidence of an alleged confession which was not voluntarily made. (2) Appellant was not effectively represented by counsel at his trial. (3) The admission in evidence of prejudicial testimony concerning the past reputation of appellant."

To review the first point we turn to the conditions under which the confession was made. It is urged in behalf of the appellant that his confession came only after several days of intensive questioning and at a time when he was ill, "both mentally and physically, and feared his girl friend would be charged with a crime." The evidence does not support this contention.

Skiskowski was questioned first on May 10, the day of his arrest. The duration of the questioning was not more than seven hours, and did not extend beyond 10:30 p.m. On the following day, May 11, he was again questioned for about seven hours, this interrogation being interrupted by his appearance before the United States Commissioner, and a lunch period. On May 12 he was questioned from four to five hours. May 13 was Sunday and he was not questioned. On May 14 he was again questioned for several hours and after being told, as he had been on previous occasions by the FBI agents, that they could give him no assurances as to the chances of his girl friend being prosecuted, he asked to see the United States Attorney. He was taken before the United States Attorney and there again expressed his interest in receiving some assurance that his girl friend would not be prosecuted. Without making any promises or offering any inducements, the U. S. Attorney restated the agents' request that he tell them the truth. On this same day his girl friend, who at the time of his arrest in her room had been too ill to be moved, came voluntarily to the New York office of the FBI and was permitted to talk with Skiskowski in the presence of the agents. Also in his presence, the agents offered to obtain a hotel reservation for her in New York City provided that she paid for her room. There is nothing in the record to indicate that during this period any threats, inducements, promises, or other means were applied to the defendant in an effort to extract a confession. It may be fairly assumed that from the tenor of the conversation in his presence Skiskowski concluded that his girl friend had not been arrested. This may have been an item of some mental relief, but it is not, in our

---

[2] Other testimony showed that the appearance before the Commissioner was a part of a removal proceeding to have him returned to the District of Columbia on the bank robbery warrant which had been issued here.

opinion, evidence that he was tricked into confessing.[3] Later, on May 14, he signed the written statement now challenged as involuntary.

It is not argued that appellant Skiskowski was subjected to any physical abuse or torment during the periods of interrogation. It was not shown that he was in fact physically ill, and the record discloses no evidence from which it can reasonably be inferred that he was mentally exhausted from extended and harassing question periods.[4]

■ As to Skiskowski's contention that his defense counsel was not given an adequate opportunity to prepare for trial, it appears that at the commencement of the trial, counsel of record informed the court that this defendant desired the court to appoint another attorney for him. The court then appointed an experienced trial lawyer, but defendant's original counsel remained as a aid to the defense throughout the trial. At the time of appointing counsel the court adjourned for a brief time and also informed defense counsel that they might request addtitional time if desired. No request was made, and the case went to trial that day. The government completed its case at about 1:30 p.m. on the following day, which was Thursday, and as it developed, the defense was not required to put on its evidence until the next Monday. In these circumstances we think that not only was the defendant represented by competent counsel, but also, that his attorney was not prejudiced in preparation by reason of time limitations.

■ The evidence which appellant Skiskowski, in his third point, urges was prejudicial as going to show past reputation came in as a response to a question asked of a police officer. The officer was asked how long he had known the defendant and he answered, "I have studied this picture about one year." Upon objection by the defense, the jury was instructed to disregard the statement. Later Skiskowski took the stand and on cross-examination was shown to have twice been convicted of crimes. In this setting, we cannot agree that the testimony was so prejudicial as to demand reversal. If not entirely cured by the instruction, any error which persisted was reduced to insignificance by the defendant's own subsequent testimony.

As to Skiskowski, therefore, the judgment must be affirmed.

## II.

Appellant Quinn assigns error with respect to: (a) The admission of the alleged confession by Skiskowski, made out of his, Quinn's presence; (b) the admission in evidence of a statement by a man named Boley, also made out of his presence; (c) the trial court's refusal to grant his motion for a directed verdict; (d) the court's charge to the jury.

■ As for the use of Skiskowski's confession the record shows clearly that at the time it was offered Quinn's counsel made the point, "It is admissible only as against the defendant, Skiskowski." To this the court replied, "That is correct. If any other defendant's name is mentioned in connection with it it would still be only evidence against defendant who is making it. The jury will understand." This was said not only in the presence of the jury, but again, in the charge the court reiterated the point with great care. We think the matter was correctly handled by the trial court and resulted in no reversible prejudice to the defendant.[5]

The statement made by Boley, which

---

3 Cf. Perrygo v. United States, 55 App. D.C. 80, 2 F.2d 181. Where a 17-year-old defendant of low mentality was confronted by an officer who brought the girl to whom he was engaged into the room and said, "Now this girl is here; you might as well tell the straight story about this affair; it is probably best for you in the end * * *."

4 Cf. Ziang Sung Wan v. United States, 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131; Gros v. United States, 9 Cir., 136 F.2d

878 (which was decided on the basis of undue delay in arraignment, under the holding of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819); Bullock v. United States, 74 App.D.C. 220, 122 F.2d 213.

5 See Sparf v. United States, 156 U.S. 51, 56, 58, 15 S.Ct. 273, 39 L.Ed. 343; Marcus v. United States, 66 App.D.C. 298, 302, 86 F.2d 854; Holmes v. United States, 56 App.D.C. 183, 189, 11 F. 2d 569.

appellant Quinn contends was erroneously admitted against him, was used during the testimony of an FBI agent who testified as to an interrogation he made of Quinn. The agent was permitted to testify that he confronted Quinn with a statement made by Boley, out of Quinn's presence. At the time the prosecution sought to introduce this testimony it was objected to by the defense on the grounds of "hearsay." Defense counsel pointed out that not only had Boley's statement been made out of Quinn's presence, but also, that Boley was not on trial or available for cross-examination. The objection was overruled. The trial court permitted the agent to testify as to this interrogation on the theory that, though Boley's statement was not admissible as such against Quinn, it was admissible for the purpose of showing Quinn's responses or reactions when confronted with the accusations contained therein.[6]

Although the government's theory as to the admissibility of this evidence does not appear clearly from the record, it would seem that the "hearsay" objection was overruled on the basis of the doctrine of "tacit" or "silent" admissions. There is a well entrenched rule of evidence which permits otherwise "hearsay" testimony to come in for the purpose of showing that the defendant, when confronted with damaging accusations in a situation calling for a response, remained silent, or affirmatively indicated agreement with the charges. See 80 A.L.R. 1236, 1240; 115 A.L.R. 1510; Wharton's Criminal Evidence 11th Ed., § 656. Assuming this to have been the theory upon which the trial court permitted the agent to testify as to Boley's statement with which he confronted Quinn, the objection was properly overruled as a preliminary matter. However, in our view, the absence of reversible error cannot be determined solely on the basis of this preliminary ruling. We must look to the subsequent testimony to see, first, if the theory

upon which it was admitted was proper for application, and second, if not, was the testimony prejudicial to the "substantial rights" of the defendant.[7]

In the course of his testimony the agent at one point characterized Quinn's reaction with these words, "he continually nodded his head in agreement with the statement." Objection was promptly made by the defense. The court then asked the witness to again illustrate how Quinn had nodded his head. This was done, and the court stated, "I wanted the record to show that the witness himself raised his head up and down several times, illustrating how the * * *." Defense counsel interposed, "I have no objection to that being in the record, but I do object to the conclusion of the witness being in the record." The court then said, "That, of course, may be stricken. That interprets it and that is for the jury to do, of course. The jury will understand that." Subsequently the agent testified that when he had finished telling Quinn what Boley had said Quinn denied participating in the robbery. This denial was brought out again in the cross-examination of the witness.

■ It is our opinion that where, as here, the final response attributed to the defendant, when confronted with the third party statement of accusation, was unmistakably negative, the whole of the testimony is objectionable. None of the collected cases cited above go so far as to admit this type of testimony in a fact situation such as we have here. It is one thing for the prosecution to show "silent acquiescence" to a third party statement, but it does not follow that, where the ultimate response is positively negative, a preliminary nodding of the head, while the statement was being read, is enough foundation to admit the testimony under this doctrine. The cases repeatedly emphasize the need for careful control of

---

[6] Boley's written statement was not produced for the reason that defense counsel preferred to interrogate the witness without the production of the statement.

[7] The Federal Rules of Criminal Procedure, Rule 52(a) provides that "Any error, defect, irregularity or variance

which does not affect substantial rights shall be disregarded." The Supreme Court has noted that this rule is "merely a restatement of existing law and effects no change in the 'harmless error' rule." Bihn v. United States, 66 S.Ct. 1172, 1174.

this otherwise hearsay testimony, and we do not think it wise to extend the "exception" to embrace any and all of the defendant's reactions. It should also be observed that where, as here, the defendant is under arrest, it is doubtful if "silent assent" is admissible.[8]

■ Where the accusatory statement is unequivocally denied by the accused it is not admissible against him.[9]

■ We come then to the question of whether this testimony, which was subject to being stricken upon proper objection, was so damaging to the substantial rights of the defendant as to require a new trial. We note first that no objection was made by the defense when it appeared that Quinn's concluding response to Boley's statement was negative. As a general rule, objections should be timely, specific,[10] and renewed, when the court's initial ruling, correct when made, is proved erroneous in the light of subsequent evidence.[11]

However, here, defense counsel not only failed to renew his initial objection by moving to strike at the close of the agent's direct examination, but he went forward with a cross-examination directed toward having the agent reiterate Quinn's denial of the Boley statement. Apparently defense counsel concluded that Quinn's defense would be as well made out by making it very clear to the jury that he had denied the charges made by Boley, as by objecting to the agent's testimony on this point. This

was a tactical decision by the defendant's counsel, and in making it he abandoned the alternative tactic of attempting to have stricken the whole of the agent's testimony relating to the Boley statement. Counsel at the time of trial probably felt, as we do, that the government's case had not been materially strengthened by the testimony which came in.[12] In terms of the effect of the testimony on the jury, we think that when the agent testified, both on direct and on cross-examination, that Quinn "denied participating in the robbery * * *," as alleged in the Boley statement, there was negatived any inference that Quinn had, by silence or affirmative conduct, admitted to the correctness of the statement with which he was confronted.

■ Taking this occurrence in its entire setting, and in the light of the clear and complete charge given the jury,[13] we are of the view that the agent's testimony regarding Boley's statement, though erroneously admitted, was so controlled (both by the court's instructions, and by the defense's tactic aimed at mitigating any damage), as to avoid prejudicial error.[14]

■ We think that there was ample evidence before the trial Court to support its refusal to direct a verdict for Quinn. Sufficient evidence was introduced to reasonably connect Quinn with the crime, and provide more than a speculative basis for the jury's determination of his guilt or innocence. The evidence showed his ac-

---

[8] See Wharton's Criminal Evidence, 11th Ed., § 661.

[9] See People v. Heissler, 338 Ill. 596, 170 N.E. 685; Com. v. Sydlosky, 305 Pa. 406, 158 A. 154.

[10] See De Forest v. United States, 11 App.D.C. 458, 460, and Fuller v. United States, 53 App.D.C. 88, 288 F. 442.

[11] See Wigmore on Evidence, 3rd Ed., 18(a) (4). Brown v. State, 173 Miss. 542, 158 So. 339, 161 So. 465.

[12] In Guy v. United States, 71 App.D.C. 89, 92, 107 F.2d 288, 291, this court, speaking through Judge Edgerton, characterized this type of situation when we said, "No evidence which was admitted over appellant's objection, or which is open to any possible objection, materially strengthened the government's case; * * *."

[13] In charging the jury, after considerable discussion with defense counsel,

the trial court gave this instruction: "Boley's statement was made out of the presence of Skiskowski and out of the presence of Quinn and, therefore, you cannot take that statement itself as evidence against either one of them. You must altogether disregard it in that respect, but if it was narrated by the agents to one or the other or both, you may take such responses to such statements as they made with respect to the matter and consider those."

[14] It should be noted that as to this point, we are for affirming without resort to the doctrine of "other evidence or overwhelming guilt." See Townsend v. United States, 3 Cir., 106 F.2d 273, 276 for a discussion of the problem of a technical error that does not affect the substantial rights of the defendant. Cf. Bihn v. United States, supra, note 7.

quaintance and relationship with the other participants, including meetings in Washington and later, after the robbery, in New York. He was shown to have hidden out with McCann and to have fled from federal officers, and he was found with a gun identified by the co-defendant as that used in the robbery.

As a final point Quinn contends that it was error for the trial court to fail to give an instruction to the effect that Skiskowski's confession and Boley's statement were to be weighed with care and caution and not relied on too heavily. Defense counsel failed to ask for this instruction, and did not except to its absence. Hence, in the light of the careful charge that was given, we do not think that he can now complain that the trial court erred in this regard.[15]

We have examined the record in these cases most carefully with a view toward making certain that no error which in fact infringed upon the fundamental rights of the defendants would escape our attention. From this examination we have concluded that nothing, whether objected to or passed over unchallenged, can be "claimed to have wrought practical injustice to them in their trials."[16]

Affirmed.

GRONER, C. J., concurring in No. 9153; dissenting in No. 9224 (separate appeals).

I concur in the conclusion reached by the Court in No. 9153 (Skiskowski v. United States), but I feel obliged to dissent in No. 9224 (Quinn v. United States).

The ground of my dissent is that in the course of the joint trial of both defendants an Agent of the Federal Bureau of Investigation was called by the Government to testify in relation to a written statement he had obtained from one Boley, an alleged participant in the crime, but who for some reason that does not appear was not on trial and was not produced as a witness. Boley's statement contained a detailed story of the plans for the robbery, preparations for its consummation and the ultimate division of the loot. The Agent testified that he took this statement to Quinn while the latter was under arrest and read or told him the portions implicating him in the commission of the crime. Objection was made in Quinn's behalf on the ground that Boley's statement was taken out of his presence, was hearsay and, therefore, was not admissible against him. The trial judge, however, permitted the Agent to testify in detail as to the contents of the statement relating to Quinn's participation in the robbery. The Agent said that when he read the statement to Quinn, the latter nodded his head, but that when he had completed reading it Quinn denied any participation in the robbery or any association with Boley. I think the Agent's testimony was inadmissible.

Presumably the testimony concerning the contents of Boley's statement was permitted on the theory of admission by standing mute. See, Wigmore, Evidence, 3rd Ed. 1940, § 1072. But the fact is that as soon as the Agent completely disclosed to Quinn the contents of the statement, Quinn denied that it was true in any respect. The rule, I believe, is that if Boley's statement had been made at such time and under such conditions that Quinn, if innocent of the crime, would naturally be expected to reply or deny the charge and if he made no reply, the statement would be admissible since the inference would be that he admitted it to be true. But even if it be admitted this is the rule, there is nothing in the circumstances related by the Agent to make it applicable in the present case. The fact that Quinn nodded his head certainly is not of itself, and in the face of his absolute denial at the conclusion of the Agent's recitation of the statement, sufficient to make it admissible. Moreover, I believe the better rule, and that adopted by the majority of federal courts, is that a person's failure to make a reply *while under arrest* cannot give rise to any inference of admission. Yep v. United States, 10 Cir., 83 F.2d 41; McCarthy v. United States, 6 Cir., 25 F.2d

---

[15] See Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168.

[16] Borum v. United States, 61 App.D.C. 4, 7, 56 F.2d 301, 304.

298; Hauger v. United States, 4 Cir., 173 F. 54.

Nor am I in accord with the view of the majority that the admission of this. testimony was not prejudicial to the defendant, or that it should be characterized as "harmless" error. The evidence of Quinn's guilt was circumstantial and Boley's statement, as the argument of Government counsel on the motion in Quinn's behalf for an instructed verdict demonstrates, was largely relied upon to make out the case against him. The fact that Quinn's counsel may have argued to the Court and to the jury that Quinn's denial of the statement made it unworthy of belief does not in my opinion change the situation. It was the only tactic left to the defense under the circumstances.

I am, therefore, in favor of awarding Quinn a new trial. Cf. Bihn v. United States, supra.