TERRY, Associate Judge:
 

 This is an appeal from a conviction on two counts of maintaining a public hall without a license (D.C.Code § 47-2820 (1981)) and two counts of operating a business without a certificate of occupancy (11 DCMR § 8104.1 (1982)). Appellant was sentenced to thirty days in jail on each count, plus a $500 fine; the jail sentences were ordered to run concurrently.
 
 [1]
 

 I
 

 Early in 1981 the police conducted an undercover investigation of the Playground Swing Club at 36 N Street, S.E. The club was operated by appellant and owned by RPE Associates, Inc., of which appellant was president, treasurer, and a member of the board of directors. The investigation resulted from an anonymous tip that sexual activity had occurred there.
 
 [2]
 

 Two undercover police officers, Samuel Bennett and Kenneth Brown, testified about their experience in the club. Together with two female officers, they went to the club twice in civilian clothes, posing as two “swinging” couples on each occasion. On their first visit they were admitted by Sylvia Vacchio, who charged them an admission fee of $15 per couple and required them to sign their first names (but not their last names) to copies of an “agreement” which she provided.
 
 [3]
 
 Vacchio then directed them to a room to change into robes provided by the club. After putting on the robes, the officers proceeded to the second floor, where they found a projector and a screen for showing slides, a television set with a video laser disc player for showing movies, a room where people were dancing, and various light snacks. The officers also saw numerous couples engaged in sexual activities. They did not see, however, any kind of public hall license or certificate of occupancy.
 

 On the officers’ second trip to the club about six weeks later, they again saw Vac-chio, who this time was accompanied by appellant. After paying an admission fee of $25 per couple, the officers again changed into robes and went to the second floor. There they saw people engaged in sex in what was designated as the “Fanta
 
 *1258
 
 sy Room.” Then, with the help of other police, the undercover officers conducted a raid on the club. Several of the club’s clients were later charged with oral sodomy.
 

 Gary Smith, who worked as a bouncer at the club, corroborated the police officers’ testimony on several points. In particular, he confirmed that the club charged admission and provided dancing, movies, and slide shows for its clientele. He also testified about the club’s schedule for admitting swinging singles, couples, and homosexuals on different nights of the week and acknowledged that the club’s patrons engaged in sexual relations.
 

 The government introduced several exhibits, some of which have been made part of the record on appeal. They included the certificate and articles of incorporation of RPE Associates, Inc., indicating appellant’s various corporate functions; a copy of
 
 Cheri
 
 magazine containing an article on the Playground Swing Club; and two issues of “Met Personals,” a tabloid newspaper published by RPE. One issue contained a full-page advertisement for the Playground Swing Club, and the other had an article describing the activities at the club.
 

 Appellant stipulated that the club had no licenses of any kind. Defense counsel did not object to the testimony of the government’s witnesses about the sexual activities at the club; in fact, he elicited more testimony on the same subject when cross-examining both police officers.
 

 II
 

 Appellant first contends that D.C.Code § 47-2820 (1981), specifically the phrase “entertainments of any description” in subsection (b), is unconstitutionally vague. We hold that because the club’s activities clearly required a license under other portions of section 47-2820, appellant lacks standing to raise a vagueness challenge.
 

 Section 47-2820 provides in pertinent part:
 

 (a) Owners or managers of theaters in which
 
 moving pictures
 
 are displayed, for profit or gain, shall pay a license fee of $415 per annum.
 

 (b) Owners or managers of buildings in which skating rinks, fairs, carnivals, balls,
 
 dances,
 
 exhibitions, lectures, or entertainments of any description including theatrical or dramatic performances of any kind are conducted, for profit or gain, shall pay a license fee of $50 per annum_ [Emphasis added.]
 

 The Supreme Court held in
 
 Parker v. Levy,
 
 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974), that “[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.”
 
 See also Leiss v. United States,
 
 364 A.2d 803, 807 (D.C.1976),
 
 cert. denied,
 
 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977). It cannot be denied that dancing and the showing of moving pictures require a license under the specific provisions of section 47-2820. Although the dancing was most likely not the main attraction, it nevertheless played a significant part in the club’s operations. Officer Bennett testified that “numerous people at various times [were] dancing” at the club; in addition, a full-page advertisement in the “Met Personals” claimed that the club featured “Washington’s first videodisc laser disco” as well as a slide show of “erotic” pictures. Furthermore, this same advertisement invited its readers to “[c]ome watch our movies” at the club on Saturday night. Even though the Playground Swing Club might not fit the traditional concept of a “theater,” part of it was in fact used “for housing ... motion-picture shows” (The Random House College Dictionary 1361 (1982)) through its video laser disc equipment, and these movies were provided in order to attract patrons.
 

 Appellant maintains that the movies and dancing were only incidental to the club’s more erotic activities. Even though this may be true, it is irrelevant. Appellant is not excused from complying with section 47-2820 in every particular.
 
 See
 
 
 *1259
 

 Deinlein v. District of Columbia,
 
 386 A.2d 296, 303 (1978). The dancing and motion pictures, coupled with the admission fee, plainly required a license, and the evidence demonstrated (indeed, appellant stipulated) that the club had no license. Thus, under
 
 Parker v. Levy, supra,
 
 appellant lacks standing to challenge the remainder of section 47-2820, and we need not decide whether the phrase “entertainments of any description” is unconstitutionally vague.
 

 Ill
 

 Appellant’s other contention is that the prosecutor improperly elicited testimony regarding the sexual activities at the Playground Swing Club, since he was not charged with any offense relating to those activities. However, appellant not only failed to object to this testimony, but elicited further testimony on the same subject on cross-examination of the government’s witnesses. We therefore hold that he waived any objection he might have had.
 

 When a defendant fails to object to the admission of certain testimony, and then further develops that testimony on cross-examination, he will not be heard to argue on appeal that its admission constituted reversible error.
 
 Skiskowski v. United States,
 
 81 U.S.App.D.C. 274, 158 F.2d 177 (1946),
 
 cert. denied,
 
 330 U.S. 822, 67 S.Ct. 769, 91 L.Ed. 1273 (1947). According to
 
 Skiskowski,
 
 a defendant who follows this course makes a “tactical decision ... and in making it he abandon[s] the alternative tactic of attempting to have stricken the whole ... testimony_”
 
 Id.
 
 at 279, 158 F.2d at 182.
 
 See also Casper v. State,
 
 244 Ga. 689, 695, 261 S.E.2d 629, 633 (1979),
 
 cert. denied,
 
 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980);
 
 People v. Lewis,
 
 75 Ill.App.3d 259, 287, 30 Ill.Dec. 751, 772, 393 N.E.2d 1098, 1119 (1979);
 
 State v. Collins,
 
 587 S.W.2d 303, 306 (Mo.App.1979). Having adopted this strategy, appellant cannot now complain if it backfired.
 

 Appellant asserts that his “harsh” thirty-day jail sentence demonstrates the prejudicial effect of the testimony in question. This argument is totally without merit. A trial court “is to be accorded very wide discretion in determining an appropriate sentence. The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed.”
 
 Wasman v. United States,
 
 — U.S. -, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984);
 
 accord, e.g., Williams v. New York,
 
 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949);
 
 see
 
 18 U.S.C. § 3577 (1982). This means that the trial court in this case was fully entitled to consider the testimony about the goings-on at the Playground Swing Club in deciding what sentence to impose. Since appellant claims no prejudice other than the impact of that testimony on the sentence, we hold as a matter of law that there was no prejudice. Appellant’s thirty-day jail sentence was well within the ninety-day maximum, and thus we may not disturb it.
 
 Foster v. United States,
 
 290 A.2d 176, 179 (D.C.1972).
 

 IV
 

 The trial court sentenced appellant to thirty days’ imprisonment on each of the four counts, plus a $500 fine. Failure to have a certificate of occupancy, however, is punishable only by a fine. 11 DCMR § 8105.1 (1982). Thus the court erred in imposing a jail sentence on the two certificate of occupancy counts, but because the sentences are all concurrent, the error is harmless. We therefore vacate the jail sentences on the two convictions of failing to have a certificate of occupancy. In all other respects the judgment of conviction is
 

 Affirmed.
 

 [1]
 

 . Appellant was tried with a co-defendant, Sylvia Vacchio, who did not appeal.
 

 [2]
 

 . There was some evidence which suggested that the investigation was for drug sales rather than sexual activity.
 

 [3]
 

 .These "agreements" were almost immediately torn up and thrown into a wastebasket.