MARLEY v. STATE.

[69 South. 210—68 South. 770.]

1. CRIMINAL LAW. *Objections to indictment. Presentation below. Evidence. Dying declaration. Objection to. Homicide. Statement of fact. Admissibility. Weight. Competency. Determination. Instructions. Statement of bystander. Previous difficulty. Profane language.*

   An objection to an indictment based on the ground that the grand jury was not sworn, is not well taken, when first raised after conviction, on appeal in the supreme court, since under Code 1906, sections 1413-1426-1427 so providing, a judgment of conviction shall not be arrested for any defect or omission in any grand jury which might have been raised before verdict.

2. CRIMINAL LAW. *Evidence. Dying declaration. Objection.*

   Where in the trial of a case for homicide the only objection to the admission of a dying declaration, was that it was a statement of a conclusion and not a statement of facts, such an objection did not properly present the ground that the declaration was inadmissible because declarant was actuated by malice, ill will, and a spirit of revenge.

3. HOMICIDE. *Dying declaration. Statement of fact.*
   A statement in a dying declaration by deceased that defendant killed him was not objectionable as a statement of an opinion, instead of a statement of fact.

4. HOMICIDE. *Dying declaration. Extent.*
   A dying declaration must be restricted to the act of killing and the circumstances immediately attending the act which forms a part of the *res gestae.*

5. HOMICIDE. *Dying declarations. Admissibility. Weight.*
   It is the province of the trial court to determine whether the dying declaration was made *in extremis,* and whether declarant realized his condition, and whether it should be submitted to the jury at all. It is for the jury to say under proper instructions, when such declaration is admitted in evidence, what weight shall be attached to it.

6. DYING DECLARATIONS. *Competency. Determination.*
   If the evidence as to the dying declaration clearly shows that the declaration was actuated by malice, venom, ill will, and desire for revenge, it should be excluded altogether from the consideration of the jury, but if by reason of a conflict in the evidence, it is not clear in the mind of the court whether the dying declaration is the result of malice, ill will, and a spirit of revenge upon the part of the deceased toward the defendant, the solution of that question is for a jury under proper instructions.

7. DYING DECLARATION. *Instructions. Evidence.*
   Where there was evidence that a dying declaration was made in a revengeful spirit, and accompanied with profane language and revengeful expressions, it was error to refuse an instruction, that if deceased was in a revengeful frame of mind against defendant, and was actuated by malice or ill will, the the testimony as to his dying declaration should be disregarded.

8. CRIMINAL LAW. *Evidence. Statement of bystander.*
   In the trial of a case for homicide, it was error to allow a witness to testify that as deceased and defendant were walking up the street immediately before the killing, some bystander said "there is going to be trouble."

9. HOMICIDE. *Evidence. Prior difficulty..*
   Where on the trial of a case for homicide the evidence showed that prior to the killing there had been a difficulty between deceased and two persons employed on an estate managed by defendant, which difficulty related to matters in connection

with the estate, and that after this difficulty such persons walked to a commissary, from which defendant and another came in a few minutes, and walked with indications of excitement and anger to the point where the killing occurred, evidence of the details of the difficulty was admissible as a circumstance to be considered in determining whether the meeting between defendant and deceased was accidental or intentional on the part of defendant and his companion.

10. HOMICIDE. *Evidence. Profane language.*
   In a trial for murder, it was improper to admit evidence of profane language by a third person in a prior difficulty with deceased and alleged to have some connection with the killing, that he would like to "put some hot lead in the —"

APPEAL from the circuit court of Tallahatchie county. HON. E. D. DINKINS, Judge.

E. J. Marley was convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*Cutrer & Johnston, A. H. Stephen and Rowe Hays,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney-General, and *R. N. Miller,* for the state.

LYELL, Special Judge, delivered the opinion of the court.

The appellant was indicted at the January term, 1914, of the circuit court of Tallahatchie county, upon a charge of murder. Upon his trial he was convicted of murder and sentenced to life imprisonment. The indictment and conviction were for the killing of one T. Y. Wylie on March 15, 1913, in the town of Sumner, Tallahatchie county, Miss. The homicide occurred at a drug store in said town on Saturday afternoon, where said Wylie was standing on the inside at the time that the defendant and one Zack Denton together entered the said drug store. The shooting began at the time Denton and Marley entered the front door of the drug store. Denton received only one, but a fatal,

wound from Wylie's pistol, and ran out of the drug store, and expired in a few minutes on the walk in front of same. Marley ran from the drug store while the shooting was in progress, but after it had begun, and was not wounded. There were twelve or thirteen bullet holes, exits and entrances together, in Wylie's body. Wylie lived about thirty minutes after he was shot, and expired on the operating table in a physician's office in the rear of the drug store where he was taken after the shooting. The evidence discloses that Wylie had emptied his pistol containing six cartridges, and Denton emptied his pistol containing the same number.

The appellant did not testify. His counsel contend that he did not participate in the shooting. It appears that he was armed with a pistol at the time of the homicide, and there was evidence indicating that he participated in the shooting. The evidence disclosed that bad feeling existed between Wylie, on the one hand, and the appellant and Denton, on the other, and that Wylie had threatened them, and that Marley had threatened Wylie. So far as Marley is concerned, this feeling appears to have grown out of the alleged fact that Wylie had run laborers off the Smith Murphy estate, which had been under the management of appellant for two or three years. This estate owned and operated a plantation commissary in the town of Sumner, and Wylie had formerly been employed by said estate, but had been discharged by Marley some time before the homicide. One Pope was a bookkeeper at the commissary, and one Ferguson was another employee. Zack Denton was employed by the same estate.

A few minutes before the homicide there was a difficulty, or near difficulty, between Wylie and Pope and Ferguson in the street near the drug store. Evidence as to the details of this difficulty was, over the objection of appellant, permitted by the court to be considered by the jury. Though Marley was the only one indicted

for the homicide, it is argued by counsel for the state that there was a conspiracy between appellant and Pope and Ferguson and Denton to kill Wylie, and that after the difficulty in the street between Wylie and Pope and Ferguson the two latter went to the commissary where Marley and Denton were at the time, and from which Marley and Denton emerged in a few minutes and walked rapidly up the street from the commissary, which was situated on the northwest corner of the courthouse square, in the town of Sumner, to the northeast corner of the square to the drug store where Wylie was at the time, and where the homicide immediately occurred.

The court admitted the dying declaration of Wylie as detailed by his wife and by one L. L. Jones, a deputy sheriff. A witness for appellant, one F. L. Sumner, also testified to the dying declaration of Wylie.

There are many assignments of error which we do not deem it necessary to consider in view of what is hereinafter decided. We hold that the presiding judge was not disqualified to try appellant.

The assignment of error as to the alleged invalidity of the indictment is not well taken. The point was not raised in the lower court. *Hayes* v. *State,* 96 Miss. 153, 50 So. 557.

It is assigned as error that the court erroneously admitted the dying declaration of the deceased. Proper objection was not reserved in the lower court to the admissibility of this evidence upon the ground relied upon in this court for reversal. It is here contended for the first time that the declaration was inadmissible for the reason that the evidence disclosed that the declarant was actuated by malice, ill will, and a spirit of revenge toward defendant, and the *Reeves Case,* 64 So. 836, is relied upon as requiring the exclusion of the dying declaration altogether from the jury. In the Reeves Case, however, it will be noted that the dying

declaration was specifically objected to in the lower court upon the grounds mentioned.

The testimony of Mrs. Wylie as to the dying declaration was not objected to by appellant. A general objection only was made to the testimony of the deputy sheriff, L. L. Johnson, the other witness for the state who testified to the dying declaration. After the state rested, appellant moved the court to exclude such parts of the testimony of Mrs. Wylie as dealt with declarant's statement as to what he desired done with his life insurance, the schooling of his children, and his private affairs, and other parts upon the further ground that the dying declaration was a statement of a conclusion and not a statement of facts. The statement specifically objected to was: "Marley killed me."

The court sustained the objection to the statements with reference to his private affairs, the schooling of his children, his insurance, etc., but admitted the statement: "Marley killed me." That statement was manifestly a statement of a fact, and not of an opinion. The dying declaration must be restricted to the act of killing and the circumstances immediately attending the act which form a part of the *res gestae.*

The appellant introduced a witness, F. L. Sumner, who was present at the time of the dying declaration of the deceased. After the state and defendant finally rested, the appellant moved to exclude all the testimony as to the difficulty between the deceased and Pope and Ferguson prior to the homicide, and also testimony of Mrs. Wylie, and also the testimony of each and every witness as to any purported dying declaration. This motion was overruled by the court, and the record does not show that any exception was reserved to such ruling. It is true that specific objection had been interposed to all evidence relating to the difficulty in the street prior to the homicide, on the ground that Marley was not shown to be connected with the difficulty.

We do not think that proper objection was reserved to the introduction of the dying declaration upon the grounds upon which its admissibility is attacked in this court.

It is the province of the trial court to determine whether the declaration was made *in extremis,* and whether declarant realized his condition, and whether it should be submitted to the jury at all. It is for the jury to say, under proper instructions, when such declaration is admitted in evidence, what weight shall be attached to it. It is therefore important to consider the instructions granted and refused defendant with reference to the dying declaration.

Preliminarily, we observe that, if the evidence as to the dying declaration clearly shows that the declaration was actuated by malice, venom, ill will, and desire for revenge, it should be excluded altogether from the consideration of the jury. *Reeves* v. *State,* 64 So. 836. Whenever, by reason of a conflict in the evidence, it is not clear in the mind of the court whether the dying declaration is the result of malice, ill will, and a spirit of revenge upon the part of the deceased toward the defendant, the solution of that question is for a jury under proper instructions.

The fifth instruction requested by defendant and refused by the court was in the following language:

"The court instructs the jury for the defendant that, if they believe that T. Y. Wylie at the time he is alleged to have made a dying declaration, or statement, to any witness who has testified in this case, was in the frame of mind revengeful against the defendant, desiring to seek revenge, and to that end made the statements, or if from all the evidence in the minds of the jury such dying declarations evinced upon the part of the deceased, T. Y. Wylie, malice, hatred, or ill will towards the defendant, they shall disregard the testimony of each and every witness who has testified to

anything that the deceased, T. Y. Wylie, said to such witnesses.''

This instruction should have been granted, and the refusal to grant same constitutes reversible error. Obviously, if it was clear that the dying declaration in the instant case was made by deceased in the manner and accompanied with the profane language and venomous and revengeful expressions detailed by appellant's witness F. L. Sumner, the court should not have submitted it' to the jury at all, had the proper objection been interposed. So likewise, if the jury found as a matter of fact that the dying declaration was actuated by malice, hatred, ill will, or a spirit of revenge, it was their duty to disregard the dying declaration altogether. Appellant was entitled to an instruction charging the jury as to their duty in that connection, upon request therefor. The jury should know what legal consequence follows such a finding of fact by them.

The court also erred in permitting the witness Will Woods to testify that as Marley and Denton were walking up the street towards the drug store immediately before the killing some bystander said: ''There is going to be trouble.'' This evidence was properly objected to by appellant, and the court erroneously overruled such objection, to which ruling of the court proper exception was reserved. Under the facts of this case, this evidence was manifestly incompetent.

We now consider appellant's assignment of error in admitting evidence as to the details of the street difficulty between Wylie and the two employees of the Smith Murphy estate, Pope and Ferguson. Pope and Ferguson did not testify upon the trial.

Without detailing all the facts and circumstances of the case, we hold that such evidence was admissible, although there may have been insufficient evidence to show a conspiracy between Pope, Ferguson, and Denton and appellant to kill Wylie. The undisputed evi-

dence is that deceased was charged by Pope with telling lies on him in connection with appellant's plantation hands, and such hands being run off the Smith Murphy place by Wylie. Wylie denied having anything to do with the hands, and claimed he did not bother any of them. Pope, who did not testify, is quoted by state's witness Walter E. Wood, who testified as to this street difficulty, as further stating that he did not care anything about Mr. Marley's part of it, but wanted his name kept out of it. Wylie said that he had been accused by some one of getting labor off the Smith Murphy place. Pope said he did not care where Wylie ran the labor; that was not his business. Wylie said he had not been trying to get hands, but if any hands wanted to go with him he had the money. Pope said all he had to do was to look after the commissary books and to keep his name out of it. There was much profane and threatening language addressed by Pope to Wylie in this conversation. Pope was armed at the time, and one witness said he had his hand on his pistol. As Wylie walked away Pope, with a vile oath, said he would like to fill him full of red-hot lead. After this near difficulty, Wylie walked to the drug store where the killing occurred, and Pope and Ferguson walked toward or in the direction of the commissary on the northwest corner of the block, from which commissary Marley and Denton came in a very few minutes—about four or five the witness Wood stated—and walked at a good pace direct to the drug store on the northeast corner of the block, where the double homicide took place immediately. Witnesses testified to the excited and determined and angry expressions upon the faces of Marley and Denton as they walked to the drug store talking together, one of the witnesses saying that Marley had his right hand "inside his coat," and that Denton had his right hand in his pants pocket resting on his pistol, the handle of which was seen by the witness.

This evidence was admissible as a circumstance to be considered by the jury in determining whether the going of Marley and Denton from the commissary to the drug store was with or without the intention of looking up Wylie; in other words, whether the meeting of the three at the drug store was accidental or intentional upon the part of Marley and Denton.

The state did not request any instructions based upon the street difficulty as evidencing a conspiracy to kill Wylie. The objection first interposed to this evidence was a general one which was overruled by the court. After the state rested, the appellant moved the court to exclude the testimony of every witness showing or attempting to show, either directly or indirectly, a difficulty between T. Y. Wylie, deceased, and one H. H. Pope and John Ferguson, and for cause of this motion says:

"There has been no attempt to connect the defendant, E. J. Marley, with this difficulty, and on the contrary, the evidence shows that he was entirely excluded from the difficulty and in no way connected with it. Second. There is nothing in the evidence to show any connection with E. J. Marley with this difficulty or alleged difficulty."

Motion was overruled, and appellant excepted to such ruling.

After both sides had rested, appellant renewed his motion to exclude this evidence. The motion was overruled, but no exception was reserved to such ruling of the court.

As before stated, we hold this evidence competent as a circumstance to be considered by the jury in determining whether the meeting of Wylie and Marley and Denton at the drug store was accidental or intentional upon the part of Marley and Denton.

We do hold that the profane language used by Pope as Wylie walked away, to the effect that he would like to "put some hot lead in the———," should not be admitted upon a second trial, as this record now stands.

We pass on no other questions.

It follows from what we have said that the judgment of the circuit court should be, and it is, reversed, and the case is remanded for a new trial.

*Reversed and remanded.*