LOFTIN *v.* STATE.[*]

(March 26, 1928. Suggestion of Error Overruled April 23, 1928.)

[116 So. 435. No. 26939.]

---

[*]Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 734, n. 20; p. 885, n. 63; Homicide, 30CJ, p. 322, n. 65; As to sufficiency of evidence of voluntariness of confession, see 1 R. C. L. 583; 1 R. C. L. Supp. 206; 5 R. C. L. Supp. 34.

*S. V. Little* and *W. M. Lofton,* for appellant.

230

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Argued orally by *S. V. Little,* and *W. M. Lofton,* for appellant, and *Rufus Creekmore,* for the state.

COOK, J. The appellant, Hines Loftin, was convicted in the circuit court of Smith county on a charge of murder, and was sentenced to be hanged, and from this conviction and sentence he prosecutes this appeal.

The facts as shown by the record are substantially as follows:

The appellant is a young negro about twenty-four years of age, and was the stepson of the deceased, who was about seventy-three years of age at the time of his death. The killing took place about three o'clock in the afternoon, and the body was found near the edge of a cornfield with a bullet hole through his head, one through his body which apparently entered the chest just above the heart, and one which entered the body near the middle of the back. The left pocket of the deceased's trousers was turned wrong side out, and a short distance from his body his empty pocketbook was found. The body of the deceased was found at the root of a tree in a sitting posture, but hunched over, with his hat still in his hand. Several persons heard the shots fired and one state witness, who was near the scene of the shooting, saw the appellant moving away from the place where the deceased's body was found, through the brushes and in a stooping position. The appellant was accosted by this witness, and then stated that two white men had shot the deceased. The alarm was given, and in a few moments several persons were at the scene. The appellant then, of his own accord, suggested to the assembled party that perhaps it would be best for them to search him because they might think that he had killed the deceased for his money. This statement strengthened the suspicions already in the minds of the people assembled at the scene, and the appellant was taken into custody. The deceased at whose home the appellant usually stayed lived on the farm of Jim Broadfoot, and the appellant was held in custody at the home of Mr. Broadfoot to await the arrival of the sheriff, who did not arrive until about ten o'clock that night. A large number of people, variously estimated at from thirty-five to seventy-five, gathered at the home of Mr. Broadfoot during the evening. Several of this number interrogated the appellant, and about nine o'clock he made a confession.

When this confession was first offered in evidence, it was objected to, and thereupon the jury was excluded, and the witness by whom it was proposed to prove the confession was fully examined by counsel for the state and the defendant. The witness testified that quite a crowd of men were assembled at the house of Mr. Broadfoot, two or three of whom had guns; that the appellant's hands were tied behind him with a rope; that no threats of violence were made against the appellant and no hope or promise of reward or inducements of any kind were held out to the appellant, so far as she knew or heard; and that the confession was freely and voluntarily made. The appellant offered no evidence to controvert the testimony of this witness that the confession was free and voluntary, and upon the testimony of this witness the trial judge held that the confession was admissible. Numerous witnesses were offered by the state to prove this confession, or others made at or about the same time, and each time the same procedure was followed. When the witness was offered to show the confession, he was fully examined and cross-examined, in the absence of the jury, in reference to the circumstances under which the confession was made, and each of them testified that no force or threat was used, no promise or hope of reward was offered, and that the confession was free and voluntary. The appellant offered no testimony at any of these preliminary examinations, and only the fact that a crowd was present and the appellant's hands were tied was developed to controvert the testimony of these witnesses that the confessions were free and voluntary. Upon this testimony the trial judge found that the confessions were freely and voluntarily made and were admissible.

The several witnesses who heard the confessions of the appellant varied to some extent in giving the details thereof, but all the versions thereof were substantially the same as that detailed by one witness in the following language:

"Well, I walked up to him and said, 'Hines, what in the world did you kill Mose for?' And he said, 'Boss,' we had a difficulty.' And I said: 'You didn't do no such a thing; you didn't have no difficulty with Uncle Mose.' And I told him to tell me the truth about it, what he killed him for and how he killed him. He said, 'Boss, I'll tell you the truth.' He says, 'I got over the fence and walked up to him and asked him how much money he had.' He said he was sitting down, and he looked up at him and said, 'I got thirty dollars,' and then I said, 'Why don't you give ma some money?' and he said, 'Well, Hines, I owe some debts and we will have to pay them, and when we sell a little more cotton and have a final settlement, I will give Babe her part.' I said, 'What did you do then?' and he said, 'I shot him,' and I said, 'Where?' and he said, 'Right here in his old head.' I said, 'What did he do?' and he said, 'He hunched up like this' (indicating), and I said, 'What did you do then?' and he said, 'Shot him right in there.' I said, 'What did you do then?' and he said he put his hands in his pocket and got the money and went on, and he looked back, and Mose was still sitting up, and he went back and shot him in the back.''

There was also offered in evidence a confession made on the following day to a person who was passing the jail where the appellant was incarcerated, and who casually spoke to the appellant and asked him what he was in jail for. There was no suggestion that any improper inducements were offered to elicit this confession, but it was objected to presumably on the ground that it was made under the improper influence of hope or fear induced by the acts of the parties who had him in custody the night before.

In the confessions first made, the appellant stated that he hid the deceased's money under the bottom rail of a fence near where the killing occurred, and that he threw his rifle into some weeds over a fence near by. Upon in-

vestigating the truthfulness of this statement, the rifle and the money, consisting of two ten-dollar, -one five-dollar, and three one-dollar bills, were found at the place where the appellant said he hid them. From certain marks thereon, one of the ten-dollar bills found under this fence was identified by a witness as being a bill which she had paid to the deceased a few days before he was killed.

When the appellant introduced his testimony on the merits, then, for the first time, was there any testimony offered tending to show that the confessions were not voluntarily made. He offered the testimony of two witnesses who were present when he first confessed, who testified that they told the appellant that if he would tell the truth about it it would be lighter on him and they would help him, one of them by going on his bond, and the other by furnishing him a house and supplies while he worked for him.

The appellant took the witness stand in his own behalf and admitted the killing, but claimed that he killed the deceased in self-defense. He stated that he and the deceased got into an argument down in the cornfield; that the deceased became enraged at him, picked up a large stick, and started on him in a threatening manner; that he retreated from the deceased until he reached a wire fence so that he could retreat no further; that the deceased was still coming on him with the stick, and he then shot once to frighten the deceased away; and that this was not effective, and he then shot him because he believed he was in danger of losing his own life or suffering some great bodily harm at the hands of the deceased. He denied the truth of the confessions made by him, and stated that he was induced to make these confessions through fear and the promises of assistance given him by the two witnesses for the defendant whose testimony has been hereinbefore referred to.

After the introduction of this testimony by the appellant which it is claimed tends to show that the confes-

sions were not free and voluntary, no motion was made to exclude the confessions which the court had already admitted in evidence.

The method pursued in passing upon the admissibility of these confessions was somewhat unusual. When the confession was first offered, the court conducted an examination, in the absence of the jury, and heard the evidence of the state's witness as to its competency and admissibility. At this examination the appellant offered no evidence, and the court held that the testimony showed that the confession was free and voluntary, and admitted it in evidence, and in so holding we do not think the court committed reversible error.

It is true, as held in *Ellis* v. *State*, 65 Miss. 44, 3 So. 188, 7 Am. St. Rep. 634, that—"After a confession has been admitted by the court, either party has a right to produce before the jury the same evidence which was submitted to the court when it was called upon to decide the question of competency, and all other facts and circumstances relevant to the confession, or affecting its weight or credit as evidence; and if it should be made to appear at this point, or any other, during the progress of the trial, that the confession was made under such circumstances as to render it incompetent as evidence, it should be excluded by the court."

But in the case at bar no request was made of the court to exclude the confessions after the introduction of testimony which it is now claimed tended to show that the confessions were inadmissible. Whether or not a confession was made without the influence of hope or fear being exerted on the accused by any other person is a preliminary question for the court to pass upon, and the court properly conducted a preliminary examination to determine the competency of the confessions. At this examination the appellant offered no evidence, and upon the proof before him the trial judge held that the confessions were shown to be free and voluntary, and we

are unable to say that, in so doing, the court below committed error. The court was never thereafter called upon to pass upon the competency of these confessions. In the introduction of his proof, on the merits, the appellant offered testimony which it is now claimed tended to show that the confessions were made under the influence of hope or fear, but after the introduction of this testimony no motion was made to exclude the confessions. If, as contended, this testimony tended to show that the confessions were inadmissible, as to which we express no opinion, the court committed no error in not excluding them, in the absence of a request so to do.

The appellant next contends that a peremptory instruction requested by him should have been granted. Aside from the confessions, we think the testimony was amply sufficient to warrant the submission to the jury of the question of the guilt or innocence of the accused. The confessions are corroborated by the physical facts and by facts discovered in consequence of the confessions, and the entire evidence for the state, if believed, discloses a most revolting and cold-blooded murder. None of the other assignments of error are argued by counsel, and none of them have any merit.

The judgment of the court below will therefore be affirmed, and Friday, May 4, 1928, is fixed as the date for the execution of the sentence of the court below.

*Affirmed.*

ANDERSON, J. (dissenting). The testimony introduced by the state on the preliminary hearing as to whether or not the appellant's confession of guilt was free and voluntary was properly objected to by the appellant, and the action of the court in overruling appellant's objection thereto was excepted to by the appellant. In substance, it showed that the confession was made by appellant in the nighttime, while he was under arrest with his hands tied behind him, in the presence of from twen-

ty-five to seventy-five white people who had gathered around him, some of them with guns. Imagine a negro making a voluntary confession of the crime of murder under such circumstances and surroundings, especially in view of the well-known nature and characteristics of the negro, and his relations to the white race! Notwithstanding the witnesses for the state testified that no threats had been made against the appellant, nor had he been promised any reward before making the confession, the very atmosphere of the situation, it seems to me, showed that the confession was the result of fear —the fear of being mobbed. The crowd surrounding the appellant in the nighttime,' with guns in the hands of some of its members, must have looked to him like a mob. Can it be said that the requirement of the law, that the evidence must show beyond a reasonable doubt that the confession was free and voluntary, was complied with? I think not.

My opinion, therefore, is that the judgment in this case ought to be reversed without looking to the testimony offered by appellant for the purpose of showing that his confession was not free and voluntary, and which the majority opinion holds should not be considered, because the appellant failed to move the court to exclude all testimony bearing on the question at the conclusion of the testimony offered by him.

McGOWEN, J., concurs.